Madam Clerk, will you call the next case? Okay, Apollon, whenever you're ready. Thank you. Thank you. Thank you. Good morning, Your Honors. Counsel, may it please the Court. My name is Emmanuel Welch and I represent the Village of Broadview, the Apollon in this case. Your Honors, we are here today to ask this Honorable Court to reverse the decision issued by the Illinois Labor Relations Board in this matter. The decision of the ILRB was clearly erroneous in light of precedent issued by this Honorable Court and precedent issued by our Supreme Court of this great state. Your Honors, we believe the ILRB should be reversed for three reasons. One, Broadview Police Sergeant's principal work is substantially different from that of its patrol officers. Two, Broadview Police Sergeants have authority in more than one of the 11 categories enumerated in Section 3R of the Act. And three, Broadview Sergeants consistently use independent judgment when exercising the authoritative functions that they perform on a daily basis. According to this Honorable Court in the Village of Hazelcrest v. ILRB, this Honorable Court said that an administrative decision like the ILRB's is subject to a clearly erroneous standard of review when it involves a mixed question of law and fact. And similar to the Hazelcrest matters, Your Honors, we do believe this appeal does involve mixed questions of law and fact and the clearly erroneous standard of review applies. Also, Your Honors, for the record, we do believe the Hazelcrest matter and the City of Freeport v. the ILRB decided by our Supreme Court are controlling matters in this case with very similar fact patterns that we have in the underlying case here today. We believe that the Illinois Labor Relations Board was clearly erroneous when it decided that the Broadview Police Sergeant's principal work was not substantially different from patrol officers. We believe that because of what the Supreme Court has stated in the City of Freeport v. ILRB. Our Supreme Court said that for an employee to be a supervisor, the employee's main undertaking must differ from the main undertakings of his subordinates. The Supreme Court said, though, this is not a quantitative test. The Supreme Court has said that an employee may even engage in the same work as his subordinates a majority of the time. But it is the essence, if the essence of his work differs from that of his subordinates, a supervisory determination may result if other indices are present. In the instant case, we believe the ILRB was clearly erroneous because it was focused on the wrong thing. It was focused on the numbers, the percentages that are involved, as they overemphasize in their briefs. So your argument is that the Labor Relations Board applied the wrong test? We believe- Applied a quantitative test as opposed to a qualitative test that they're required to. Absolutely, Your Honor. We've got a bad test on one of the elements. What about the next element? On the next element, Your Honor- Eleven factors. We believe that the Labor Board just ignored this Court's precedent in the Village of Hazelcrest matter. This Honorable Court found that the presence of even one indicia of supervisory authority accompanied by independent judgment is sufficient to support a finding of supervisory authority. They found none. They found none. They found none. Right. There's 11 that there possibly could be. They found none. There's at least one present in this case. In the Hazelcrest case, this Court specifically held that the evidence that sergeants had the authority, just the fact that they had the authority to discipline patrol officers through verbal and written reprimands was sufficient. Similarly, again in this Court, looking at this Court for precedence, the Metropolitan Alliance of Police v. ILRB and the Village of Bellwood, this Court found that the sergeants were supervisors because they had the ability. They simply had the ability to issue personal incident reports for officers who violated department rules. The ILRB ignored all of that when it found that it had no levels of indicia present. Here, the record is complete with facts, even if we just look at the administrative law judges. The administrative law judge admits that Broadview sergeants, that it is the Broadview sergeants who operate in a military fashion and the strict chain of command is enforced in Broadview just like in any other police department. What do you do with the chief's testimony on the ability to discipline when he turned around and said that only he or the lieutenant can impose discipline? He couldn't care what the rules and regulations say. But in that police department, only he or the lieutenant can impose discipline on a subordinate. Officers, the only thing the sergeants can do is orally counsel subordinates who engage in inappropriate behavior, but the counseling sessions are neither memorialized nor recorded in their personal files. What do you do with that testimony? First Your Honor, I do believe that discipline is just one of the 11. We understand that. But there are some of them that are without contest. I mean, you don't suggest that these sergeants have the power to fire. They have no power to transfer. They have no power to lay off. They have no power to recall. They have no power to promote. And they have no power to discharge. So all of those are gone. Now we're going to talk about the others. Discipline is one of them. But we've got the chief testifying that only he or the lieutenant can discipline. What are we doing? Well, the chief also said, Your Honor, as Your Honor just read, that they also have the ability to orally counsel patrol officers. And we believe that the precedent that has been set by this honorable court in the village of Hazelcrest, that that is enough, that that's sufficient. In the Hazelcrest matter, this court specifically said that having the authority to do that, which is not contested in this case in the chief's testimony, that they do have the authority and ability to orally counsel patrol officers. That is discipline, Your Honor. And we believe, based on the precedent set by this court, that that is sufficient discipline. Also, the chief has testified, and it is uncontested in this matter, that the sergeants have the ability to adjust grievances at the first step. It's in the patrol officer's collective bargaining agreement. It's in the Broadview Police Department rules and regulations, which sergeants are charged with making sure subordinates perform and follow the rules and regulations of the department. It is uncontested that the sergeants of the Broadview Police Department approve I-bonds. So only sergeants do that, not patrol officers. Only the sergeants get to approve strip searches if strip searches are needed. It is sergeants, if we ever have a domestic violence situation in the village of Broadview, that make the determination on which person is going to get arrested in that situation. I also believe that it's very important, and we can't ignore the fact, that it is sergeants who make at least $10,000 more than patrol officers. In a system that is shaped in the fashion of the military, and the strict chain of command is enforced, that's a very significant fact, and rank plays a very important factor in this case. And the chief does admit on a couple of other instances, Your Honor, that the Broadview sergeants get to recommend patrol officers for awards, and in the record he says 100 percent of the time he's accepted. I have a question for you on the awards. The Labor Board, in one of its earlier cases, has found that non-monetary commendations that don't affect other terms of conditions and employment do not constitute awards within the meaning of 3R. Do you take issue with that proposition? I do. Because I believe when a supervisor pats an employee on the back, that does wonders for the morale in a department. And when a supervisor, like a sergeant in the Broadview Police Department, reaches out and pats his patrol officers on the back, and that moves all the way up the chain of command, and the chief of police endorses that pat on the back, that does wonders for your department. Everyone performs better, and it's no different than what we see in corporate America across this country each and every day. We believe on that point, for those reasons, the Labor Board was clearly erroneous in that regard. Finally, we believe that the Illinois Labor Relations Board was clearly erroneous when it decided that the Broadview sergeants did not consistently use independent judgment when exercising their tasks. Again, we rely on that opinion based on the Supreme Court precedent that still exists in this great state. In the city of Freeport, the Supreme Court specifically said that the requiring of the consistent use of independent judgment, the legislature clearly was not referring to the number of times the supervisor actually exercised his supervisory authority. Rather, the legislature was referring to the number of times in which independent judgment might be required. They underscored that. That consistent use of judgment is the number of times in which independent judgment might be required. We have that in the record in this case. In the instant case, Broadview sergeants clearly meet the standard set out by the Supreme Court in the Freeport case. As the chief stated, Your Honor, we've talked about here, these sergeants have the ability to orally counsel the patrol officers. They also have, which is the ALJ puts in his findings of fact, they have the ability to orally reprimand, rip and reprimand, and issue emergency suspensions. They can do that without picking up the phone and calling the chief, without picking up the phone and calling a lieutenant. They go in each and every day and conduct roll call and assign beats without checking with the chief and the lieutenant first. They make determinations on those domestic violence cases without calling the chief or a lieutenant. Similarly, we have a situation in the record that's very important. A neighboring police officer in the village of Maywood was shot and killed in October of 2006. That was in the late evening hours. A sergeant, who was the highest ranking officer on duty at that night, made the decision, the independent judgment, to send Broadview police officers over to the village of Maywood to assist over there. At the same time, now he has to also be worried about what's going on on the streets of Broadview, and he used his independent judgment and called in other officers to assist on the streets of Broadview. The police chief testified to that as one of the examples of the use of independent judgment. Similarly, with regard to recommending his officers for awards. Your Honor, I'll reserve the remainder of my comments for rebuttal, but we do believe that the village of Broadview is entitled to a reversal in this case. We ask this honorable court to reverse the decision of the ILRB because we do believe that the Broadview Police Department sergeants are supervisors within the meaning of the act. Thank you. Thank you, Counsel. Counsel? Have you, gentlemen, decided how you're going to divide your time? Yes, Your Honor. I'm Sunil Bhawe for the Illinois Labor Relations Board. We'll roughly divide our times in half, about seven to eight minutes per site. Go ahead. The board's final administrative decisions, Your Honor, should be affirmed because it's not clearly erroneous for two reasons. First, the board correctly, in its final administrative decisions, ruled that the village of Broadview failed to produce evidence sufficient to prove that the sergeants' principal work duties were substantially different than those of the subordinate officers. And secondly, It doesn't appear, though, from their opinion that they used the wrong standard. They used a quantitative standard, and they've been told not to do that. They're supposed to, with policemen, police officers, because of the way the statute is worded, use a qualitative standard, not a quantitative standard, and they use the quantitative standard. Right. I don't think that the board used a quantitative standard. We did not apply the wrong standard. What the board held was that the village failed to produce sufficient evidence to show that their principal work duties were any different than the subordinate officers. In fact, Sergeant Wagner testified that the sergeants in the field operations division spend upward of 80 to 90 percent of the time doing the same duties. Now, while that's quantitative... They focused on quantity, 80 percent, 90 percent. Right. And the cases say they're not supposed to do that. They're supposed to talk about qualitative differences. They do different things, is what they're saying, not how much time do they spend doing these things. Right. Well, the cases say the examination has to be on what is the nature and essence of the job duties. The problem here for the village is the village simply did not enter any evidence into the record to demonstrate that the nature and essence of the job duties were any different than the subordinate officers. All that the board had in front of it were these percentages that the sergeants testified to. Now, certainly the village had evidence that the sergeants performed some job duties that are different, but that doesn't show that the nature and essence of the job duties were any different. The sergeants patrol the village's streets just like the patrol officers do. Sure, they approve I-bonds. They conduct strip searches. They approve tranquilizing of animals. But these are just tangential issues to what their day-to-day functions are. But that's not really what the board said. I mean, the board in its decision said, goes to the arguments of the employer, what the ALJ said. The ALJ found in the record supports that the principal work of the sergeants was not substantially different from that of their subordinates because the principal work of both was devoted to patrol in the manner of the patrol officers. The ALJ found that sergeants spend 90 percent of their work time engaging in patrol duties, no different from those of patrol officers, pointing out that they do not patrol as backup only for purposes of overseeing the patrol officers' work. Now, that's a quantitative analysis. Right. And that defies the statute. Well, I don't think that the statute ever says that the amount of time a petition for employees spends in job duties is irrelevant. It's a factor to be considered. It's not determinative. And the problem, again, that the village runs into is, it was the village's burden of proof to demonstrate what the nature and essence of the job duties were. The ALJ and the board are constrained by what's in the record. Right. And 90 percent of the time, you know, this isn't just 51 percent to 49 percent of the time in different job duties. And this is 90 percent of the day-to-day activities of the sergeants are no different than the patrolling officers. And, again, the standard here is whether the board's decision was clearly erroneous. And given what is in the record, the board is, again, constrained to follow what it has in front of it. And I don't think there's a firm and definite conviction that the board made a mistake in finding that the job duties are no different when the sergeants do the exact same things that the patrol officers do. And then on occasion, yeah, they have these other issues, but that's because they're more experienced and have a higher level of skill that the patrol officers don't have. Your Honor, the board's decision should also be affirmed for an alternative reason, that the village has failed to produce evidence sufficient that the sergeants had any of the authority found under Section 3R of the Act. There's no evidence that any of the sergeants have the authority to discipline. The Chief confessed that only Lieutenant Kosick and himself have the authority to discipline. The sergeants do have the authority to orally counsel, but the appellate courts have already held that oral counseling does not rise to the level of discipline under the Act unless that counseling impacts the terms and conditions of the subordinate officer's employment status. That's in the Illinois Department of Central Management Services case. In this Village of Hazelcrest case, this court did not hold that oral counseling equals discipline under the Act. Village of Hazelcrest concerned, what does it mean to effectively recommend discipline? So there's no evidence of discipline in the record in this case. And as to effective recommendation of discipline, there's no evidence of that either. In Hazelcrest, there was a specific example of the petition for employees recommending discipline that the Chief of Police approved. There's no evidence of that here. There's not one instance where a sergeant has recommended discipline. All that the sergeants do is they report misconduct. They write to-from memos to the Chief. For example, Sergeant Wagner explained in one incident he told a subordinate officer to take a picture of a crime scene. The subordinate didn't do that. He detailed that in the memo and sent it up to the lieutenant or the chief. And then the lieutenant or the chief, as the chief confessed, imposes the discipline on their own. The only thing that the village can rely upon in showing-the only evidence the village can rely upon in showing that the sergeants have this purported authority to discipline are mere job descriptions that the village's rules and regulations put forth. But see, these job descriptions, all that they are is the village's view of what should be the authority. But the board must follow what the day-to-day job functions actually are. Just because the village says the sergeants have the authority to issue written reprimands. Well, if the chief says the sergeants don't have the authority to issue discipline, and in fact, you know, the job descriptions, that's not usually even how it works. Well, then the board has to follow how it usually works. Not what the village says in theory should be the case. But if they have the power, do they require any more than the power? Do the cases require any more than the power to do it? Not do they do it, but do they have the power to do it? And if they have the power to do a single one of those 11, have they not satisfied that particular element of the three? They certainly do, if they have the power. But the board's job is to determine whether they have the power. And the only way to determine that is to examine what the evidence is. And there's no evidence here other than the sergeants. Well, the rules and regulations says that you can do it. And then the chief takes the stand and says, no, they can't. And we don't care what the rules and regulations say. Only I can do it. I'm the only one that can do it. And when it comes to discipline, I'm the one that does the discipline. And if it goes over a certain level, it's the police and fire commission. And the sergeants have no right to do it. I don't care what the rules and regulations say. Do they have the power to discipline? Certainly not. Or does the board make that decision? The board makes that decision. Here we have a classic case of evidence that purports to show authority and evidence that purports to not show authority. The board is the fact finder. And the standard of review is clearly erroneous. Is it clearly erroneous that they had issues? Or is it manifestly? We believe. Is it purely factual? Right. Well, it's a factual issue. It's a legal issue of law applied to the facts. The board finds the facts as to whether or not, the pure factual issue of whether or not the sergeants have the authority to discipline, the actual discipline. For example, suppose the sergeants issue a written reprimand. Whether the sergeants can issue a written reprimand, that's a purely factual issue. But whether that is discipline under the act, that's a mixed question of law and fact. Again, in Village of Hazelcrest, that case really is an opposite. It only deals with effective recommendations of discipline. And here there's not even a recommendation of discipline that's ever been issued. And the sergeants, in fact, have testified that they don't have the authority to recommend discipline. What about the power to direct? Right. The power to direct here is only supervisory authority under the act if the actions of the sergeants affect the terms and conditions of the subordinates, employees, job duties, and they use independent judgment. Here there's no independent judgment. The evidence regarding authority to direct. I'm going to ask you a question about this power to direct. The Labor Board, in several of its opinions, has made the finding that 3R of the act, the ability to direct within 3R, supervisory authority only rises to that level when the alleged supervisor exercises sufficient discretionary authority which affects the terms and conditions of employment. Now if that's how the Labor Board interprets the ability to direct under 3R, now the question is should we adopt the Labor Board's interpretation of the statute in that regard? If so, why? I think so. I think that the Fourth District actually has adopted that in the Illinois Central Management Services case in 2008. That's one reason. But two, it's a reasonable interpretation of the act to construe authority to direct in this manner. And since the Labor Board is in charge of administering this enabling statute, the Public Labor Relations Act, so long as the interpretation is reasonable, which I think it is, because the purpose of statutory exclusion from collective bargaining is to prevent the sort of conflict of interest that arises between the petitioners. The reason why I really ask that question, and I suppose I shouldn't be overly facetious, is when we feel like it, we say the interpretation of the statute is purely a legal issue and we don't care what the administrative agency says. In other cases, when we feel like it, we say, oh, the interpretation of the statute that an administrative agency is charged with the responsibility of enforcing is entitled to deference. So is it whatever we feel like doing? I don't know. Well, at the end of the day, the court can give you Supreme Court cases on both sides of that issue. Right. Well, I think it is a well-established rule of law that even if it's a pure issue of law, if the administrative agency is in charge of administering the enabling statute, there is a certain amount of deference that is given to the agency, and that that deference is so long as the interpretation is reasonable. And if this court believes that there is another reasonable interpretation, well, I think the case law says there, because, you know, the agency is the experts in interpreting that specific administrative act, that the court is due to give some deference as long as the interpretation is reasonable. But going through the evidence of direction, for example, things like authorizing overtime. The sergeants don't use independent judgment in authorizing overtime. They have a book, and they go through the book, and they go down the list one by one, and whoever has the least amount of overtime gets called first, and it goes all the way to those who have the most amount of overtime. Scheduling vacations and breaks, that goes by seniority. The sergeants, in every aspect, are constrained to follow departmental guidelines. They can't just schedule a break whenever they want to schedule a break. And therefore, we do ask that the court follow the interpretation of the Labor Board vis-à-vis authority to direct, as the 4th District had in 2008,  With regard to reward, again, reward is only reward under the act if it can impact the terms and conditions of the subordinate employee's job status. And I think what a fundamental misunderstanding has occurred on the part of the village is using these words in the colloquial sense, instead of using these words as the board and the courts have interpreted them to be under the act. Reward doesn't mean just a pat on the back. That's not the statutory supervisory authority. There has to be some sort of impact on the terms and conditions of employment. The rewards don't, for example, lead to an increase in pay. All that they do is they get a pin to wear on their uniforms to show that they got some sort of commendation. And finally, the statutory authority of grievance was not found here because there's no evidence that the lieutenants have ever adjusted to grievance. Excuse me, sergeants have ever adjusted to grievance, correct. The sergeants can sort of informally resolve minor matters, but in the city of Freeport the Supreme Court said that that type of informal resolution of minor matters doesn't rise to the level of supervisory authority. While the collective bargaining agreement gives the sergeants the first line in the process of adjusting grievances, the testimony is clear. All that they do is they pass it up. The sergeants have never adjusted to grievance. And again, the board is constrained to file the evidence that was entered into the record, and this really comes down to whether or not the village has satisfied its burden of proof, and the village hasn't in this case, and therefore we believe that the board's decision is not clearly erroneous and should be affirmed. Thank you. Counsel, thank you. Good morning, Justices, as well as Counsel for the Illinois Labor Relations Board State Panel, Attorney General, as well as Counsel representing the village of Broadview. For the record, my name is Noel T. Verbleski, General Counsel of ICOPS. I represented the ICOPS as to the sergeants before the board in this case. As an unavailable counsel from the Attorney General representing the labor board, we're here before the court as to the matter after a plenary hearing ruled the sergeants of the village of Broadview are not sergeants within the meaning of the act. This decision was given by both the administrative law judge after a plenary hearing and by the board. This is not where they vied in any way. They both are in total agreement. Now, able counsel from the Attorney General representing the board in its decision has given a very strong and cogent argument why the board's final decision is correct. The sergeants are not supervisors within the meaning of the act. As Counsel for ICOPS, I'll try to be as brief as possible, move through this as quickly as possible, and I will discuss both the inimitable, in many cases I have done, of the qualitative versus the quantitative aspect of the great case of Freeport. Now, as Attorney representing ICOPS who presented ICOPS case before the law judge, the sergeants of Broadview, I contend, are not, were not supervisors under the act. ICOPS case in chief was presented by way of evidence from three bases, sergeants of patrol, sergeants of the administrative services, sergeants of investigation. The case in chief presented in that fashion so that the LAJ and board could fully know what the sergeants do and function in the three divisions of the department. What would happen if we were to say, you know, the village didn't prove that the sergeants in the patrol division were supervisors, but these two watch commanders, they've got the investigation and the administrative division are a different issue. Now, what would actually happen if it were found that those two are supervisors under the act, but the rest aren't? Well, they could be sent... Do they get to organize it all? No, no, no. What if they send back the sergeants of patrols are not supervisors? That could happen. I've seen it happen before. And the sergeants in administration investigations were deemed supervisors based on the case law and applicable quantitative as well as qualitative analysis. It's a two-part analysis. We don't throw out quantitative, you know, with the baby. It's part of this. And my explanation here will take that into effect. Now, in contrast, the village of Broadview presented its case in chief as to the sergeants of being supervisors within the meaning of the act, most notably through chief of police through generalized testimony and a plethora of exhibits alleging delineating what the duties and functions of sergeants were and are. Abel, Chairman Hoffman, as you have stated, you were very concerned about the fact that all those exhibits and all the duties and functions that were put down with regard to what the duties and functions of the sergeants are. Now, our contention is, in essence, what the chief testified to for the most part, and what the village of Broadview exhibits show, for all intents and purposes, is in stark contrast with the sergeants actually do and perform within the proscriptions of the chief of police. Now, you look to the Freeport decision, the case notably stated by both counsel, Attorney General and also the village of Broadview. That first element, the sergeants of patrol testified from roll call to calls from the dispatcher, that the sergeants work and is obviously and visibly different from the patrol officers' duties. This is the quantitative aspect. Ninety percent of the work is the same. And the other ten percent, which would allegedly be the contention of primary work, that's falling into the quantitative aspect, is purely clerical. They follow a personnel directive. They follow a manual. They follow the collective bargaining agreement. Don't worry about that, buddy. Excuse me? Oh, I get that. I'm sorry. Never mind. That red light was on, and we never used them, and I didn't know how it went on. I shoved it with the five on. Oh, I'm sorry. I thought I turned it off. Go ahead. Was I too loud? No, no, no. It was my fault. I should have put it on. I have a bad habit of jarring. Not my fault. Now, in the area of sergeants' administrative services, he said 80 percent of his work was not only not sergeant, not a police officer. He replaced two clerks. He directed no police officers. He was a glorified clerk. Now, the sergeant of investigation stated in his testimony, as to the investigation of cases, 60 percent of the regular investigation he did himself, lowering of staff, 40 percent by the two other investigators. He testified, and here comes the qualitative part, that any information he gave to the other investigators or directives was based solely on his years of experience, knowledge, and skill, 30 years in that department. They worked sort of like I draw to the Marine Raiders during World War II. There was really no command. They worked as a group. Now, you also have to remember this. There are specific directives, personnel manuals, collective bargaining agreements, that the sergeants were bound to follow. You have to remember that. That gets into the qualitative aspect. Now, with regard to the second element under Freeport, whether the sergeants of RUPD possess or recommend the 11 criteria, especially what we always talk about, direction, just grievances, authority to discipline, suspension, effectively recommend, all the sergeants testified. They do not direct just grievances, discipline or recommend discipline to the subordinates within the supervisory authority concept. As testified by the sergeants and with regard to the 11 criteria, the sergeants were in conduct in reporting the activities of the police officers as extremely experienced line officers, line bosses, lead workers to the officers below them. Now, here we can talk about this qualitative aspect that always is a real problem, a conundrum with the courts. That we can really discern is that the behavior conduct of the sergeants as the subordinate police officers, and noted in the appellate briefs myself and Abel Counsel, it is not such that any type of discretionary authority nor making command decisions deciding between two or more significant courses of action without guidelines or review by others. They're not standing up for giving command decisions. It's directed by directors, manuals, guidelines, and the top part of the command is the lieutenant and the chief. There, in essence, these police sergeants are flattened out, what we would call, qualified police officers. As noted by the testimony of the sergeants, they leave their subordinate police officers by severe knowledge and skill, lead worker, line officer, boss in a line, whatever you want to call it. That's what they are. That this is not supervisory as defined by Section 3R of the Act nor defined by the Illinois Supreme Court case in Freeport. Now getting into Freeport and that nature in essence concept, the sergeant's work is such that it is, as I said, lead work, a typical line boss to their subordinates. They're guided mostly by past experience and skill, the directives, police manual, and collective bargaining agreement. Many of these matters, shift scheduling, overtime, roll call, sick time, are simply matters and duties that are clerical through those documentations. So they're not taking significant course of action, judging things without any guidelines. They're directed by this. Now as to that one case, which may stick in the craw of the court, is the NEPA situation where they have an agreement between Maywood and Bellwood. They can send officers in. But the sergeant of that shift is bound by the agreement. If he gets the call, he sends the men in if he has the men to send in. If he doesn't, he can't. He's bound. He does not have command decision. If he had command decision, he could send those officers in any time he wanted to. But he can't. He's bound by the directive. That's not supervisory. Honor the act. Thanks for your question. Yeah. Your Honor, excuse me. Section 3R. Yes. On the, when talking about the differentiation of duty, says specifically except with respect to police employment. I didn't hear you, Your Honor. I'm sorry. I didn't have that right here. The statute says except with respect to police employment. Yeah. The term supervisor includes only those individuals who devote a preponderance of their employment time. Yes. To exercising that authority. In police employment, it doesn't have to be a preponderance of their time. Because all they have to do is they have the right to exercise that authority. So it's not a quantitative test. It's a qualitative test. Do they have it or don't they? Well, it's my contention it is a mixture of the quantitative, which also impinges on the qualitative aspect of the test. You have to look at both. Let me just make one comment. Hold on a second, Your Honor. Also in that act, the last section of Section 3R says, in addition, in determining supervisory status in police employment, rank shall not be determinative. Well, we understand that. No one ever said it was, and neither did they. Well, you see, my contention is, Your Honor, the Freeport test allows essentially a balance of interests with the substantially different and with the nature and essence to balance quantitative versus qualitative. Freeport, you better remember, Freeport has two tests. Yes. One for policemen and one for firemen. Oh, no, I'm talking about the police. You know, you've got to talk about only the policeman portion of the Freeport test. I know the policeman portion, and the policeman portion has to do with the fact is you don't have the proponents test. It does say about qualitative, but quantitative also impinges on the qualitative. You can't pull one away from the other, but it is qualitative. But let me go on. If you look at that McCook case that was cited by Board, I may yell at you and myself, but here's where we get into the quantitative. Ninety percent of the work of the sergeants was not different in their subordinates as to patrol and that other duties did not amount to their primary work, was such that the sergeant's work was not substantially different. Yes, first they had quantitative, the 90%, but their other alleged primary work was not of importance, or was not only of importance, it really was not the kind of where they involved 11 criteria and they had independent judgment. Well, that's a different issue. Excuse me, Your Honor? That's a different issue. You've got three elements. Yes. And independent judgment is an element in and of itself. Yes. I can understand the argument saying, look, 90% of their work is routine patrol work, but the statute says it's not a qualitative test. Yes. As to the other 10% that they do, you lose because they don't exercise independent judgment. It's only clear. But you're not losing because it's not different. You're losing because there's no independent judgment is what you're telling the village. You can't mix the two and say that because there's no independent judgment, their work is different. But what you can say is that, for the most part, their work is not substantially different. Then when you get to the qualitative portion, is it such where they are recommending actions of two or more significant actions without guidelines? They don't. And that's not supervisory. That's basically clerical. But it's not supervisory, not because it isn't different. It's not supervisory because there's no independent judgment. It's a different element. And what you're doing is you're mixing the two up. It's kind of like taking Neapolitan ice cream and mixing all three colors and then turning around and saying, you know, where's the strawberry? You've got to talk about which element you're talking about. Well, I am, Your Honor. Essentially, it is a three-part test written in not the disjunctive but conjunctive. I mean, they're not separate aspects. Yes, they are. They're totally separate. And the village has got to approve all three of them. Yes. The board has got to approve all three of them. Okay. Why don't you wrap it up so we can give them some room up? Okay. So I'm almost finished with this. What the village of Broadview has contended in the appellant's brief is by way of generalized testimony exhibits that the sergeants are supervisors within the meaning of the act. This is in direct contrast to what the incumbent sergeants stated in their testimony. In the village of Broadview's argument seems to be the following. It is written in those exhibits and generalized exhibits that they are sergeants and, excuse me, that they are supervisors. So it is. It's an argument that essentially they say it's so and it must be so. But the actual testimony of all the sergeants with all these criteria, both quantitatively and qualitatively, is that they are not supervisory. I think that the very good analysis by the LOG and the board under the village of Broadview misconstrues conceptually the three-part test under the act. Pointly with regard to the living criteria and the independent judgment test, the village of Broadview thinks that the sergeants simply identify the direction of lawful conduct is enough to meet the standard. This is not what is meant by the standard to direct, discipline, or recommend suspensions and using independent judgment. The sergeant's conduct behavior towards his subordinates as to the direction, discipline, or effectively recommending must be such which is accepted as a matter of course with no review by superiors above the rank of sergeant. They never produced one iota of evidence to that effect. That's the qualitative test. They didn't produce any such information. It's my contention that that is what is meant by the supervisory authority possessing or recommending the 11 criteria and independent judgment. This is not the case. Hold on. You've got to wind up. Okay. I just almost got there. Way over time. Okay. I just have a half paragraph. Is that okay? Yeah. Hurry up. Okay. Lastly, the appellant's argument that the superior and the sergeants are not supervisors or then must be patrol officer misconstrues 3R again based upon the board's case and decisions. The sergeants of the village of Broadview, as noted in the matter, are not supervisors but simply lead workers to their subordinates. That's the superior skill and knowledge. It's our contention the board's decision was not against this weight of the evidence and is clearly not erroneous based upon the extensive hearing that was done in this matter and the three sergeants who testified at length as to their authority, duties, and functions. Thank you, Your Honor. I request that the decision of the board be affirmed. Rebuttal. Your Honor, briefly in rebuttal, the village believes, as Your Honor has pointed out a couple of times here this morning, that the quantitative standard was used by the Illinois Labor Relations Board and that standard was improper. Counsel, assume for a minute they did use the wrong standard, that they used a quantitative standard that's evidence for their decision. Your opponent makes an interesting argument where he says, 90 percent of their work is exactly the same as the patrol officers, but 10 percent of their work is different. But the ALJ and the board found that they have 10 percent. They don't exercise any independent judgment. All they do is do clerical work. Assume they used the wrong standard on one element. On the 10 percent left, he says you lose on the other element. I think they're wrong on both points because of precedent by this court and the Supreme Court. First of all, in the village of Broadview, it's a small community. The officers are all asked to do more with less. Yes, they do a lot of the same things that patrol officers do. The record shows that. But precedent says they can do that. They can have a majority of their time doing the same thing that patrol officers do. On the other part, they're wrong because they want these people to be considered glorified patrol officers. They want them to be considered clerks. But they also, Your Honor, want to have their cake and eat it too and call them sergeants and pay them $10,000 more. Yeah, but the statute specifically says whatever rank they have is irrelevant to the question of whether they're supervisors. That's in the statute. Nothing to do with that. So the fact you call them sergeants or you call them corporals or whatever you call them doesn't have anything to do with the question of whether they're supervisors. The issue of rank is very important in determining the nature and essence of what they do. And that was determined in the Freeport case when they actually spelled out an actual nature and essence test. Do you think the sergeants of the Chicago Police Department are supervisors? The Chicago Police Department's a beast in and of itself. We know they're not supervisors. They're glorified patrol officers. But they have a different rank and they get a different pay. But under the Act, that's irrelevant. Now, granted, in a small community, it's entirely different. And that's our contention here today, Your Honor. It's a small community. We're dealing with a different element out there in the western suburbs. Here we have sergeants that want to have their cake and eat it too. And I have a perfect example of someone who has risen through the ranks, was a sergeant, became chief. And that's our current chief right now, Chief Pelletier. This is a person who was a patrol officer, was patted on the back many days by those sergeants, who eventually, because of that, rose to the ranks of chief. He started in the village in the early 80s and he's still in the village today because of the reward of becoming chief. The Attorney General and my counsel here for the union want to say that there's not one incident of discipline in the record. Case law says we don't have to prove one incident of discipline. Case law says they have to have the ability, the authority. And that's pretty clear just looking at the ALJ's findings of fact. They have the ability and the authority, and that has indeed been proven in the record. They also have the power to direct. What no one has acknowledged here today is that it is the sergeants who are in charge of that police department in the late evenings, early mornings, and on weekends. If something goes on in that village in the late evenings, early mornings, or on weekends, it is a sergeant who makes the determination on what to do. A perfect example of that was what happened when a neighboring police officer was killed in the village of Maywood. We believe, Your Honor, that all three elements exist under Section 3R. We believe that the broad view of police sergeants' principal work is substantially different from that of patrol officers. The sergeants have the authority in more than one area of the 11 categories enumerated in Section 3R, and we also believe that they consistently use independent judgment when they perform their daily tasks. We ask that this Court reverse the decision of the Illinois Labor Relations Board. Counselors, thank you. The matter will be taken under revision.